The STATE of Oklahoma, Appellant,

v.

Chris Paul COOK, Jr., Appellee.

No. O–77–405.

Court of Criminal Appeals of Oklahoma.

Jan. 30, 1978.

Preston A. Trimble, Dist. Atty., Reginald D. Gaston, Asst. Dist. Atty., Robert ·T. Rennie, Jr., Legal Intern, for appellant.

Gary W. Dart, Norman, for appellee.

OPINION

BRETT, Judge:

The defendant herein, Chris Paul Cook, Jr., was charged and tried to the court in the District Court, Cleveland County, Case No. CRF–76–430, with the offense of Unlawful Delivery of a Controlled Dangerous Substance, in violation of 63 O.S.1972 Supp. § 2–401 B. The State offered the testimony of police officers that they had witnessed a transaction in which defendant sold a controlled substance to another person. The defense offered his own testimony and testimony of the person who purportedly purchased the drugs from him to the effect that the defendant had not possessed any drugs that evening and that he had neither sold nor attempted to sell any controlled substances to the purported purchaser. After both sides had presented their evidence, the court offered to withhold any final judgment in the case if the defendant would agree to take polygraph and sodium pentothal tests. The assistant district attorney who prosecuted the case offered the services of a Norman Police Department polygraph expert in administering the tests. The court noted that the evidence obtained from these tests probably would not be admissible into evidence.

■ After the defendant submitted to extensive testing by persons trained in administering such tests, he attempted to introduce the results of the tests into evidence. The State's objection to the introduction of the evidence was sustained, but in a court minute dated December 7, 1976, the judge found that the defendant was not guilty stating:

"State's objection to the introduction of the results of both the 'lie detector' and 'truth serum' tests he voluntarily undertook sustained, exceptions allowed defendant. On parties announcement of rest, however, the Court finds such willingness neutralized some of the inferenc-

es inherent in the State's case to the extent it was not persuasive beyond all reasonable doubt, defendant is found not guilty, ordered discharged and his bond exonerated."

From this ruling, the State has perfected a timely appeal to this Court on a Reserved Question of Law pursuant to 22 O.S.1971, § 1053[3], asserting that the trial court should not have acquitted the defendant solely on the grounds of his willingness to take polygraph and sodium pentothal tests. Some jurisdictions now allow the results of such tests to be admitted into evidence for certain limited purposes under certain specified conditions. See Annot., 53 A.L.R.3d 1005 (1973), for federal cases suggesting circumstances under which the results of such tests would be allowed. See, *U. S. v. Oliver*, 525 F.2d 737 (8th Circuit 1977); *U. S. v. Russo*, 527 F.2d 1051 (10th Circuit 1975); *U. S. v. Marshal*, 526 F.2d 1349 (9th Circuit 1975); *U. S. v. Alexander*, 526 F.2d 161 (8th Circuit 1975); *U. S. v. Wranright*, 413 F.2d 796 (10th Circuit 1969); *U. S. v. DeBetham*, 348 F.Supp. 1377 (S.D.Cal.1972), affirmed 470 F.2d 1367 (9th Circuit 1972), certiorari denied 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972; *U. S. v. Ridling*, 350 F.Supp. 90 (E.D.Mich.1972); *Tyler v. Peyton*, 294 F.Supp. 1351 (E.D.Virginia 1968). Nevertheless, controlling law in Oklahoma at this time is *Fulton v. State*, 541 P.2d 871 (Okl.Cr.1975) in which we stated that:

> ". . . the introduction into evidence of polygraph examination results for any purpose, even if admitted upon stipulation of all parties, will be error."

The same has been held by this Court to be true for the so-called truth serum test. See *Henderson v. State*, 94 Okl.Cr. 45, 230 P.2d 495 (1951). In deciding the limited issue before the Court in the instant case, we need not reconsider those holdings in light of the increased scientific reliability of polygraph and sodium pentothal tests.

■ Here, the results of the tests were not entered into evidence and were not considered by the trial court. Although at the end of the presentation of evidence the trial court stated that the State had proven its case beyond a reasonable doubt, it is clear from his suggestion that the defendant take the tests that he did not think that the State actually had proved its case beyond a reasonable doubt. In a case such as this one, where the testimony consists wholly of different persons' interpretations of certain events, it is necessary for the trier of fact to consider the demeanor of the witnesses in order to determine which witness to believe. Here, the defendant's willingness to take the test was an aspect of his demeanor, which was considered by the judge, much as the way he conducted himself when he took the stand to testify in his own behalf was considered by the judge. We are not holding that the defendant's willingness to take such tests should be presented to a jury for its consideration, but we cannot say that under the circumstances of this case, the trial judge abused his discretion in considering the defendant's willingness to take the tests along with other aspects of his demeanor. Had the State proven its case beyond a reasonable doubt, there would have been no reason for the trial judge to have suggested that defendant take the tests.

For the above and foregoing reasons, the decision of the trial judge below is hereby AFFIRMED.

CORNISH, J., concurs.

BUSSEY, P. J., dissents.

BUSSEY, Presiding Judge, dissenting:

I am of the opinion that the trial Judge erred in offering the defendant an opportunity to take scientific tests, the results of which were inadmissible, at the conclusion of the trial. Although the court later properly refused to admit the results of said tests, his consideration of the defendant's willingness to take the same was error.