**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Wayne SMITH,
Defendant-Appellant.**

**No. 79–1696.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1980.

Decided Aug. 20, 1980.

Rehearing Denied Oct. 2, 1980.

Michael P. Moore, Oakland, Cal., for defendant-appellant.

Robert Feldman, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

* Honorable James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation.

Before SNEED and SCHROEDER, Circuit Judges, and BURNS *, District Judge.

SCHROEDER, Circuit Judge:

This appeal challenges the legality of a second search by customs officials after the appellant had initially evaded detection by hiding the contraband. We uphold the second search.

The appellant, Larry Wayne Smith, was a passenger on an international flight from Lima, Peru, to San Francisco, which made an intermediate stop in Los Angeles. At Los Angeles, all of the passengers, including the appellant, were processed through customs. While the passengers were off the plane for those procedures, customs agents searched the plane and discovered about three and a half pounds of cocaine hidden in the ceiling panels in the right rear lavatory of the plane. The customs agents replaced the cocaine and, joined by agents of the Drug Enforcement Administration, kept the right rear lavatory under surveillance during the continuation of the flight to San Francisco.

Shortly after the airplane left Los Angeles, appellant approached the lavatory area carrying a shoulder bag and appearing "nervous, ill, and perspiring and breathing heavily." He entered the center lavatory and remained for sixteen minutes. Only two persons used the right rear lavatory; each remained only a few minutes and carried no luggage.

After the appellant left the center lavatory a customs agent discovered that the cocaine was gone and that it could have been reached from an access panel in the center lavatory. When the plane landed in San Francisco, but prior to the deplaning of passengers, a customs agent identified herself to the appellant and informed him that

he was subject to a continuing customs examination. The agent then searched the shoulder bag and discovered the cocaine that had disappeared from the lavatory.

◼ Appellant was convicted for importation of a controlled substance, 21 U.S.C. § 952, and possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1). He appeals on the ground that the trial court improperly admitted the evidence produced by the customs agents' warrantless search of his shoulder bag. We affirm because the search comes within the customs search exception to the Fourth Amendment. *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); *United States v. Salazar-Gaeta*, 447 F.2d 468 (9th Cir.1971); *United States v. Weil*, 432 F.2d 1320 (9th Cir.1970), *cert. denied*, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971); *Alexander v. United States*, 362 F.2d 379 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); *United States v. Fogelman*, 586 F.2d 337 (5th Cir.1978), *reh. denied per curiam*, 592 F.2d 786 (1979).

The facts which are essentially undisputed leave little room to doubt that the appellant was smuggling a significant amount of cocaine into this country, that he avoided initial customs detection in Los Angeles by hiding the substance on the plane which carried him into the country, and that by virtue of constant surveillance the customs agents had probable cause to believe at the time of the search in San Francisco that the cocaine was contained in the appellant's shoulder bag. The general thrust of appellant's argument is that the search was too remote to constitute a valid customs search, and that under the Fourth Amendment a warrant was required before the officers searched the bag in San Francisco. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. MacKay*, 606 F.2d 264 (9th Cir.1979). We need not consider questions concerning the applicability of the *Sanders* and *Chadwick* decisions, since we conclude that this was a valid customs search.

◼ Appellant contends that once the customs agents had made their original search of his person and bag in Los Angeles, they could make no further search. However, appellant's position is directly contrary to the holding of this Court in *United States v. Weil*, 432 F.2d 1320 (9th Cir.1970), *cert. denied*, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). There a car which had been searched when it originally crossed the border and found to contain no contraband, was subsequently searched again on this side of the border when agents had cause to believe that the vehicle and its occupant had picked up contraband that had been smuggled across the border. There, as here, the first search was unavailing because the smuggler was physically separated from the contraband at the time the search occurred. The second search which took place in *Weil*, as in this case, when the smuggler had gained possession of the contraband on this side of the border, was upheld. The same result should follow here. See also *United States v. Salazar-Gaeta*, 447 F.2d 468 (9th Cir.1971).

◼ Appellant also contends that since the primary purpose of customs searches is to seize contraband property rather than to apprehend persons, *Alexander v. United States*, 362 F.2d 379 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966), customs officers should simply have seized the contraband at the moment of its discovery rather than waiting until surveillance identified which passenger on the plane was actually bringing the contraband into the country. However, this Court in *Alexander* approved the surveillance of a suspicious vehicle, entering the country in order to apprehend both the driver of the vehicle and the accomplice to whom he was making the delivery of the contraband.

It requires no discourse to convince that the work of Customs officials is made more effective by identification of the smugglers who bring in the contraband. To that end, it is not always advisable to make the search in the immediate vicinity of the point of border crossing.

362 F.2d at 382. *Accord, United States v. Fogelman*, 586 F.2d 337 (5th Cir.1978), *reh. denied per curiam*, 592 F.2d 786 (1979). Appellant attempts to distinguish this case on the ground that here the contraband had actually been discovered prior to the challenged search while in *Alexander* the contraband had not. We find that distinction immaterial. It would make little sense to hold that agents may defer seizure when they have reason to believe that contraband exists, but may not do so when they know that it does in fact exist. The essential holding of *Alexander* is that the agents could defer seizure of contraband until, by means of surveillance, they had identified those responsible for its unlawful importation. That was all that was done in this case. See also *Government of Canal Zone v. Eulberg*, 581 F.2d 1216 (5th Cir.1978) in which a van was initially searched and discovered to contain some contraband, and a full search was postponed until after the van had been picked up and the smuggler thus identified. The Court there quoted *United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971) in holding that a person is not immune from further examination by customs agents "merely because he 'may momentarily escape detection and pass safely through the first Customs check.'" *Government of Canal Zone v. Eulberg, supra* at 1218.

One unusual feature in this case is that the seizure took place only a brief time after the border crossing but a great distance from the border, because air, not surface transportation was involved. The distance is not a factor here, however, because the appellant had not mingled in the normal stream of commerce so as to lessen the certainty that the contraband had come directly across the border. In fact, the officials had complete certainty that both the appellant and the contraband crossed the border, *see United States v. Sayer*, 579 F.2d 1169 (9th Cir.1978). *See also United States v. Warner*, 441 F.2d 821, 833 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). The customs agents' continual surveillance of the plane and of the appel-

lant's activity justified the second search. *See United States v. Fogelman*, 586 F.2d 337 (5th Cir.1978), *reh. denied per curiam*, 592 F.2d 786 (1979).

Affirmed.